**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| **BRANDON YANIZ and** ) | |
| **AMANDA YANIZ,** ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| **v.** ) | |
| ) | **JURY TRIAL DEMANDED** |
| **CITY OF ELGIN, CITY OF ELGIN** ) | |
| **POLICE DEPARTMENT, CITY OF ELGIN** ) | |
| **POLICE OFFICERS SHAWN SPROLES (#407)** ) | |
| **RAUL LARA (#414), TODD RAMLJAK (#305),** ) | |
| **and AS-YET UNKNOWN ELGIN POLICE** ) | |
| **OFFICERS,** ) | |
| **Defendants.** ) | |

## COMPLAINT

NOW COME the Plaintiffs, BRANDON YANIZ (hereinafter "Brandon") and AMANDA

YANIZ (hereinafter "Amanda"), by and through their attorney, Jeffrey A. Meyer of the firm of

KLEIN, STODDARD, BUCK & LEWIS, LLC, and for its Complaint against the Defendants,

CITY OF ELGIN, CITY OF ELGIN POLICE DEPARTMENT, CITY OF ELGIN POLICE

OFFICERS SHAWN SPROLES (#407), RAUL LARA (#414), TODD RAMLJAK (#305), AND

OTHER AS YET UNKNOWN CITY OF ELGIN POLICE OFFICERS (collectively, "Defendant

Officers"), and state as follows:

### Introduction

1. Plaintiffs, Brandon and Amanda, were detained by Elgin Police Officers Shawn Sproles

   and other Defendant Officers without lawful justification. Brandon and Amanda were

   compliant with Defendant Officers leading up to and at the time of their detention, and

   Defendant Officers had no legal justification to detain or arrest Brandon and Amanda or

1

to forcibly enter their residence.

2. To cover up the unjustified detentions, search and seizure, Defendant Officers did not release Brandon and Amanda immediately upon realizing they had no reason to detain Brandon and Amanda. Rather, the Defendant Officers extended their search and seizure to seek a belated justification by continuing to detain Brandon and Amanda, running their identities and Brandon's firearm through the department's database, and searching their residence after and beyond an initial sweep of the premises.

3. Defendant Officers' unlawful conduct is the product of policies and practices of the Elgin Police Department (hereinafter "EPD").

4. Brandon and Amanda bring this action pursuant to 42 U.S.C. § 1983 and Illinois law to redress their injuries.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b). The events giving rise to the claims asserted herein all occurred within the Northern District of Illinois – Eastern Division, Defendant City of Elgin is a municipal corporation located here, and, on information and belief, all or most of the parties reside in this judicial district.

## Parties

7. Plaintiff Brandon Yaniz is a 39-year-old individual residing in the City of Elgin. He has never been convicted of a crime.

8. Plaintiff Amanda Yaniz is a 34-year-old individual residing in the City of Elgin. She has never been convicted of a crime.

9. Defendant City of Elgin is a municipal corporation under the laws of the State of Illinois,

with its principal place of business located in Kane County, State of Illinois, and Defendant, City of Elgin Police Department ("EPD"), is a department of the City of Elgin.

10. Defendants SHAWN SPROLES (#407), RAUL LARA (#414), and TODD RAMLJAK (#305), are City of Elgin police officers. At all times relevant to this Complaint, these Defendant Officers and as-yet unknown City of Elgin police officers acted under color of law and within the scope of their employment as police officers for the City of Elgin.

## Factual Allegations

11. In the early evening of October 22, 2017, an as-yet unknown EPD officer (hereinafter "the Unknown Officer") stopped by Brandon and Amanda's residence (hereinafter the "Residence") to locate John Dean, an individual apparently sought for questioning in criminal activity.

12. The Unknown Officer rang the doorbell adjacent to the entry door located between the 1st floor commercial units at 163 and 165 East Chicago Street, which doorbell rings in the Residence which is located in the 2nd floor above the commercial unit at 163 E. Chicago Street.

13. Brandon heard the doorbell, exited his second-floor unit, descended the stairs, and unlocked and opened the exterior door at the bottom of the stairs.

14. The Unknown Officer advised Brandon that the EPD were searching for John Dean and asked Brandon if he had information on where to find him.

15. Brandon advised the Unknown Officer that his family owns the premises at 163 and 165 E. Chicago Street, that he and his wife, Amanda, reside in the Residence above the commercial unit at 163 E. Chicago Street, that John Dean was a tenant leasing the first

floor commercial unit at 165 E. Chicago Street, and that John Dean did not have access to the second floor.

16. The Unknown Officer advised Brandon of information that gave Brandon the clear impression that John Dean was a dangerous individual.

**The Arrest of Brandon and Amanda**

17. On October 22, 2017, at approximately 8:00 p.m., Brandon and Amanda heard loud, repeated and aggressive door-pull noises coming from the private hallway leading from the ground level up to the Residence. Brandon and Amanda saw light flashing through the transparent plastic barrier above the header of their apartment door.

18. Considering the information provided earlier that day by the Unknown Officer, Brandon and Amanda feared that John Dean or other dangerous persons associated with John Dean had gained or were seeking entry into the premises.

19. Amanda searched for her cellular telephone to call 911 and report the suspicious noises and light.

20. Fearing that his and Amanda's safety was eminently threatened, Brandon retrieved his lawfully owned firearm, existed the door of the Residence, and turned on the hallway light to investigate the noises and lights in the private hallway.

21. At all times relevant hereto, Brandon's firearm was at his side, not raised or at the ready, and was never pointed down the hallway stairs or toward the front door to the private hallway. Brandon's attention was toward the rear of the building, exposing his back to the officer on the street.

22. The private hallway is accessible only by those tenants who rent upper-level space and always remains locked. The private hallway is not accessible to the lower-level

4

commercial tenants.

23. Within a few seconds of entering the private hallway, Brandon heard and then saw someone at the bottom of the stairs and outside the exterior door yelling at him to drop his weapon.

24. Brandon saw that the individual yelling commands at him had a weapon in his hand pointed in his general direction, and Brandon immediately set his firearm on the ground and put his hands up above his body.

25. After Brandon dropped his weapon, he heard the individual yelling commands identifying himself as a police officer. Said officer is now known to be Officer Shawn Sproles (hereinafter "Sproles").

26. Sproles had his weapon at the ready and pointed at Brandon even after Brandon's weapon was on the floor and he had his hands in the air.

27. Sproles kicked in the exterior door leading into Brandon and Amanda's private hallway and forcibly entered the premises. Neither Sproles nor any other EPD officer requested or were granted permission to enter the premises.

28. After breaking into the private hallway, Sproles commanded Brandon to come down the steps. Brandon complied with Sproles' command.

29. Brandon was handcuffed and placed in an EPD police vehicle outside the premises.

30. The Defendant Officers did not ask or give Brandon an opportunity to identify himself before he was restrained and placed in the police vehicle.

31. By this time, Amanda had walked into the private hallway with her hands in the air.

32. Sproles commanded Amanda to come down the stairs. Amanda complied with Sproles' command.

33. Amanda was handcuffed and placed in an EPD police vehicle outside the premises.

34. The Defendant Officers did not ask or give Amanda an opportunity to identify herself before she was restrained and placed in the police vehicle.

35. Brandon advised one of the Defendant Officers, believed to be Officer Lara (hereinafter, "Lara"), that he and Amanda lived in the Residence.

36. Lara checked Brandon's pockets, pulled out his wallet and checked his identification. The identification corroborated Brandon's statement, and showed conclusively that Brandon is not John Dean.

37. Defendant Officers decided to run Brandon's license to seek belated justification for his improper detention.

38. Notwithstanding the fact the Defendant Officers knew that Brandon was not John Dean, its officers proceeded to search through the Residence.

39. The search of the Residence was invasive and lasted long past an initial "sweep" of the premises.

40. The EPD's body camera footage of the incident shows a search of the Residence and private hallway by Defendant Officers including one with a fully automatic or selective fire rifle; officers in and out of the Residence even after the initial "sweep" was complete (with some officers even offering anecdotes about how "cool" the apartment is); a sergeant ordering Brandon and his firearm be run to confirm he had no outstanding warrants and that the weapon was lawfully owned so that all of the Defendant Officers' errors that night "may not matter anyway"; an evidence technician being ordered and then proceeding to photograph Brandon's weapon even after it was established that it was lawfully owned; and, Defendant Officers continuing to occupy the private hallway long

after they knew (and had discussed) that Brandon is not John Dean and that Dean only

leases 1st floor commercial space in the adjacent building.

**Count I – 42 U.S.C. § 1983**
**False Arrest/Unlawful Detention**
**Against All Defendants**

1-40.  For paragraphs 1-40 of Count I of its Complaint, Plaintiffs restate paragraphs 1-40

above as though they were full set-out herein.

41.  As is described more fully above, one or more of the Defendant Officers falsely arrested

and unlawfully detained the Plaintiffs without justification and without probable cause in

violation of the Fourth and Fourteenth Amendments to the United States Constitution.

42.  The misconduct described in this Count was undertaken with malice, willfulness and

reckless indifference to Plaintiffs' constitutional rights.

43.  The misconduct described in this Count was objectively unreasonable and was

undertaken intentionally with willful indifference to Plaintiffs' constitutional rights.

44.  The misconduct described in this Count was undertaken pursuant to the custom, policy,

and/or practice of Defendant City of Elgin, such that Defendant City of Elgin is also

liable, as described above.

45.  As a result of Defendant Officers' misconduct described in this Count, undertaken

pursuant to the City's police and practice as described above, Plaintiffs have suffered

injury, including property damage, physical and emotional harm.

**Count II – 42 U.S.C. § 1983**
**Unlawful Search and Seizure**
**Against All Defendants**

1-40.  For paragraphs 1-40 of Count II of its Complaint, Plaintiffs restate paragraphs 1-40 above

as though they were full set-out herein.

7

41. As is more fully described above, one or more of the Defendant Officers violated Plaintiffs' Fourth Amendment right to be free from unreasonable search and seizure by seizing Plaintiffs without justification and without probable cause and by conducting illegal searches of their bodies and their Residence.

42. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

43. The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Elgin, such that Defendant City of Elgin is also liable, as described above.

44. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's police and practice as described above, Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count III – 42 U.S.C. § 1983**
**Failure to Intervene**
**Against All Defendants Excluding Sproles**

1-40. For paragraphs 1-40 of Count III of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. As is more fully described above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violation of Plaintiffs' constitutional rights as set forth above, but failed to do so.

42. The Defendant Officers' actions were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

43. The misconduct described in this Count was undertaken pursuant to the custom, policy, and/or practice of Defendant City of Elgin, such that Defendant City of Elgin is also

liable, as described above.

44. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's police and practice as described above, Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count IV – 42 U.S.C. § 1983**
**Conspiracy to Deprive Constitutional Rights**
**Against All Defendants**

1-40. For paragraphs 1-40 of Count IV of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. As is more fully described above, there was an agreement between the Defendant Officers to deprive Plaintiffs of their constitutional rights.

42. Specifically, the Defendants conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In furtherance of the conspiracy, each of the co-conspirators committed overt acts and was an otherwise willful participant in joint activity.

43. The conspiring Defendants' actions were undertaken intentionally, with malice and reckless indifference to Plaintiffs' rights.

44. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiffs have suffered injury, including loss of liberty, property damage, emotional harm, and financial harm.

**Count V – State Law Claim**
**Right to be Free from Unreasonable Search/Seizure**
**Art. 1, Sec. 6 of IL Constitution**
**Against All Defendants**

1-40. For paragraphs 1-40 of Count V of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. As is more fully described above, one or more of the Defendant Officers violated Plaintiffs' right to be free from unreasonable search and seizure by searching the Residence without probable cause or other justification.

42. The misconduct described in this Count was objectively unreasonable and undertaken with malice, willfulness, and reckless indifference to the rights of others.

43. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's police and practice as described above, Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count VI – State Law Claim**
**Assault and Battery**
**Against Defendant Sproles**

1-40. For paragraphs 1-40 of Count VI of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. As is more fully described above, one or more of the Defendant Officers intentionally caused Brandon and Amanda reasonable apprehension of harmful or offensive contact.

42. When Sproles intentionally raised his gun and pointed it at Brandon and Amanda, they had a reasonable apprehension that he was going to pull the trigger and cause them offensive contact and serious bodily injury using deadly force.

43. Brandon and Amanda also had a reasonable apprehension that they were going to be injured when Sproles kicked down their door with a gun in hand.

44. As a result of the Defendant's acts or omissions described in this Count the Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count VII – State Law Claim**
**False Arrest and False Imprisonment**
**Against All Defendants**

1-40.   For paragraphs 1-40 of Count VII of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41.   The Defendant Officers unreasonably restrained Brandon and Amanda against their will and impinged their liberty interests when the Defendant Officers arrested or detained them in police vehicles.

42.   The Defendant Officers did not have reasonable grounds to believe that any criminal offense had been committed or that Brandon and Amanda committed such act, nor was there probable cause for an officer to believe that they might have committed any other unlawful action.

43.   As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's policy and practice as described above, Plaintiffs have suffered injury, including emotional harm.

**Count VIII – State Law Claim**
**Intentional Infliction of Emotional Distress**
**Against Defendant Sproles**

1-40.   For paragraphs 1-40 of Count VIII of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41.   Sproles' conduct was extreme and outrageous because he used an unreasonable and unnecessary amount of force to intimidate Brandon and Amanda when he kicked down the door and pointed his weapon at them.

42.   Sproles knew that there was a high probability that his conduct would be severely distressing to Brandon and Amanda. Any reasonable person would know that forcibly breaking down the door to another's home while unjustifiably pointing a firearm at them would result will cause emotional distress.

11

43. Sproles' conduct did, in fact, cause severe emotional distress to Amanda as evidenced by the counseling she has needed since the incident.

44. As a result of the Defendant's acts or omissions described in this Count the Plaintiffs have suffered injury, including physical and emotional harm.

**Count IX – State Law Claim**
**Conversion**
**Against Defendant Sproles**

1-40. For paragraphs 1-40 of Count IX of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. Sproles converted property for his own use and exercised dominion and control when he kicked down the hallway door. He did not have a right in the property.

42. As a result of the Defendant's acts or omissions described in this Count the Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count X – State Law Claim**
**Trespass**
**Against All Defendants**

1-40. For paragraphs 1-40 of Count X of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. Sproles trespassed when he intruded into the private hallway of Brandon and Amanda's apartment building.

42. Various other Defendant Officers, including but not limited to Lara and Sergeant Ramljak, trespassed when they entered the private hallway and Residence to conduct a sweep and search.

12

43. Then they stayed within those premises long after it was established and known that Brandon was not their suspect and that John Dean was not present in nor did he have access to the Residence or the private hallway.

44. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's police and practice as described above, Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count XI – State Law Claim**
**Negligent Supervision**
**Against All Defendants Excluding Sproles**

1-40. For paragraphs 1-40 of Count XI of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. The EPD had a duty to supervise Sproles because of their employer and employee relationship.

42. The EPD negligently supervised Sproles because they allowed him to continue to unlawfully detain Brandon and Amanda after they knew about their unlawful arrest and detention.

43. The EPD negligently failed to confirm that Sproles' arrest and detention of Brandon and Amanda was supported by probable cause.

44. If the EPD and Sproles' supervisors had intervened, Brandon and Amanda would not have been unlawfully or unreasonably detained, nor would their Residence and personal property have been unlawfully seized and searched.

45. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's police and practice as described above, Plaintiffs have suffered injury, including property damage, physical and emotional harm.

**Count XII – State Law Claim**
**Conspiracy**
**Against All Defendants**

1-40.   For paragraphs 1-40 of Count XII of its Complaint, Plaintiffs restate paragraphs 1-40 above as though they were full set-out herein.

41. Two or more EPD officers conspired and performed the overt tortious acts set forth above, with the purpose of concealing or belatedly justifying the initial wrongful conduct by Sproles, and are therefore liable as civil conspirators.

42. As a result of Defendant Officers' misconduct described in this Count, undertaken pursuant to the City's police and practice as described above, Plaintiffs have suffered injury, including property damage, physical and emotional harm.

WHEREFORE, the Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants City of Elgin, City of Elgin Police Department and the Defendant Officers, awarding compensatory damages and attorneys' fees, along with punitive damages against the Defendant Officers in their individual capacities, and any other relief this Court deems just and appropriate.

**JURY DEMAND**

Plaintiffs BRANDON YANIZ and AMANDA YANIZ hereby demand a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

BRANDON YANIZ and AMANDA YANIZ

By: KLEIN, STODDARD, BUCK & LEWIS, LLC

By:      */S/   Jeffrey A. Meyer*
         Jeffrey Meyer, one of their attorneys

14

Jeffrey A. Meyer
KLEIN, STODDARD, BUCK & LEWIS, LLC
2045 Aberdeen Court, Suite A
Sycamore, IL 60178
Ph. 815-748-0380
Fax 815-748-4030
E-mail jmeyer@kleinstoddard.com
IL Atty. No. 6293377